| | |
|---|---|
| 1 | Michael S. Elkin (admitted *pro hac vice*) |
| | melkin@winston.com |
| 2 | Thomas Patrick Lane (admitted *pro hac vice*) |
| | tlane@winston.com |
| 3 | WINSTON & STRAWN LLP |
| | 200 Park Avenue |
| 4 | New York, NY 10166 |
| | Telephone: (212) 294-6700 |
| 5 | Facsimile: (212) 294-4700 |
| 6 | Erin R. Ranahan (SBN: 235286) |
| | eranahan@winston.com |
| 7 | WINSTON & STRAWN LLP |
| | 333 S. Grand Avenue |
| 8 | Los Angeles, CA 90071-1543 |
| | Telephone: (213) 615-1700 |
| 9 | Facsimile: (213) 615-1750 |
| 10 | Attorneys for Defendants |
| | BILL GRAHAM ARCHIVES LLC, d/b/a |
| 11 | WOLFGANG'S VAULT, NORTON LLC, and |
| | WILLIAM E. SAGAN |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| GREG KIHN, an individual; and RYE BOY MUSIC, a California Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>BILL GRAHAM ARCHIVES, LLC, dba WOLFGANG'S VAULT, a Delaware Limited Liability Company; NORTON, LLC, a Minnesota Limited Liability Company; and WILLIAM SAGAN, an individual,<br><br>Defendants. | Case No. 4:17-cv-05343-YGR<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' DECEMBER 6, 2019 SUBMISSION** |

Defendants Bill Graham Archives, LLC, Norton LLC, and William Sagan ("BGA") hereby submit the following response to Plaintiffs Greg Kihn and Rye Boy Music's ("Plaintiffs'") December 6, 2019 Brief in response to the Court's November 20, 2019 Order regarding who bears the burden under 17 U.S.C. § 1101. Plaintiffs advance three arguments as to why BGA should bear the initial burden under Section 1101 in order for Plaintiffs to prove their claim that BGA's lawful recordings are bootlegs. Plaintiffs' arguments fail for the reasons discussed herein.

## I.     LICENSE AND CONSENT DIFFER UNDER THE COPYRIGHT ACT

Plaintiffs' first argument attempts to equate the statutory element of "consent" and the affirmative defense of "license" generally under "copyright law," without any examination of the statutory text at issue. Dkt. 160 at 3. But the element of consent (as it appears in the statutory preamble of Section 1101) and the common law affirmative defense of license are not equivalent. The distinction between the two statutes is key: a claim under Section 1101 is *not* a claim under 17 U.S.C. § 501(a), which gives rise to a claim for general copyright infringement. Indeed, if Congress intended to treat the claims identically, Section 106 would provide for the protections embodied in Section 1101. Furthermore, and as discussed in detail in BGA's briefing on this issue, Dkt. 161 at 1-3, Section 1101 has been interpreted as a quasi-copyright claim, originating from Congress's power granted under the Commerce Clause, rather than the Copyright Clause. *See Kiss Catalog, Ltd. v. Passport Int'l Prods., Inc.*, 405 F. Supp. 2d 1169, 1171 (C.D. Cal. 2005); s*ee also United States v. Moghadam*, 175 F.3d 1269, 1280–81 (11th Cir. 1999). Simply put, Plaintiffs' reading has no textual support and pays no attention to the different claims to which Section 1101 and Section 501(a) apply.[1]

Plaintiffs' argument is further undermined by considering what Section 1101 seeks to protect: the exploitation of performers who do not know they are being recorded. Without such a recording, however, there is no work that is "fixed in any tangible medium of expression," which is needed for copyright protection, and therefore for a claim of infringement. 17 U.S.C. § 102.[2] A transient

---

[1] *Interscope Records v. Time Warner, Inc.* is not instructive, as the redundancies identified were reflected in BGA's affirmative defenses for copyright infringement under 17 U.S.C. § 501(a) for which lack of consent is not a part of a plaintiff's prima facie case, versus Section 1101 where consent *is* part of a plaintiff's case. No. CV101662SVWPJWX, 2010 WL 11505708, at *2 (C.D. Cal. June 28, 2010).
[2] Indeed, Section 1101 is more akin to right of publicity claims than rights protected by Section 501(a). In a right of publicity suit, a plaintiff must make a showing that the use of their name, likeness or

performance cannot qualify for copyright protection—which is where Section 1101 comes in, providing a separate and distinct right for performers. And under Section 1101, consent is *part* of the statutory claim, much like the elements codified in Section 501(a) or the equally analogous 15 U.S.C. § 1114(1)(a) for trademark infringement. Dkt. 161 at 1-3. Consent is therefore not an affirmative defense, but rather *lack* of consent is an element of a plaintiff's prima facie showing.[3]

Because Section 1101 and Section 501(a) create separate and distinct claims, and because statutory analysis governs the application of burden, the "general presumption" that Plaintiffs would have this Court extend does not apply. For these reasons, Fed. R. Evid. 301 is inapposite. The presumption Plaintiffs rely on here is irrelevant to the question of burden and has no bearing on whether or not an artist authorized BGA's predecessors in interest to create such recordings. In order for Fed. R. Evid. 301 to apply, there must be a presumption that the works are *unauthorized*—Section 1101 creates no such presumption. Even taking Plaintiffs' assertion that a presumption that artists should control their "works" governs Section 1101 (even though there is no "work" until a performance is fixed or recorded)— Plaintiffs' argument still fails. BGA, in referring the Court to its plethora of evidence of artist consent, is not seeking to rebut the presumption that artists should or should not control their works, but rather to demonstrate that *artists are controlling their works and authorizing BGA to promote historical recordings.*

Plaintiffs also point to the Uruguay Round Agreements Act ("URAA") and TRIPS as evidence that consent and license are equivalents, despite statutory differences that would counsel otherwise. Dkt. 160 at 3. The URAA, however, merely suggests that Section 1101 "was passed to 'ensure that performers enjoy a high and uniform level of protection' against bootlegging." *Id.* Requiring Plaintiffs to bear the burden to make a prima facie case that recordings are bootlegs does not contravene this

---

image was unauthorized in order to make out a claim for commercial misappropriation. Notably, "a plaintiff must prove all the elements of the common law cause of action. In addition, the plaintiff must allege a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir.2001).

[3] Indeed, under the principles of statutory construction, the fact that Congress *included* the word consent in the text of Section 1101 and *not* in the text of Section 501(a) further confirms that license and consent should be treated differently. *See F.T.C. v. Sun Oil Co.*, 371 U.S. 505, 514–15 (1963) (Congress's intent can be presumed where term included in one provision of a statute, but not another); *see also Atchison, Topeka & Santa Fe Ry. Co. v. State of Ariz.*, 78 F.3d 438, 445 (9th Cir. 1996).

principle. Moreover, Plaintiffs' explanation of the requirements of the TRIPs Agreement is factually inaccurate—the cited provisions *do not* require Section 1101 to be considered under "the general body of copyright law." Section 9(1) applies the Berne Convention, and Section 14(1) is merely an anti-bootlegging provision. Plaintiffs' reading is further undermined by case law that has found Section 1101 to be a "quasi-copyright" claim. *See Kiss Catalog, Ltd.*, 405 F. Supp. 2d at 1171; *see also Moghadam*, 175 F.3d at 1280–81. As Plaintiffs' arguments as to why license and consent are equivalents must fail, Plaintiffs should continue to bear the burden of making out a bootlegging claim.

## II. PLAINTIFFS MISAPPREHEND THE REQUIREMENTS OF SECTION 1101

Despite Plaintiffs' straw man-attempt to convince the Court otherwise, BGA does not dispute that affirmative defenses are BGA's burden to prove. Consent in the context of Section 1101, however, is not an affirmative defense.[4] BGA further does not dispute that any raised affirmative defenses must be capable of proof on a class wide basis (and neither consent nor BGA's defenses are capable of such resolution for the reasons discussed *infra* at Section III). In making their second argument, Plaintiffs attempt to pivot away from the question raised by the Court, analogizing class action cases where *express* consent is an affirmative defense. Indeed, Plaintiffs spend a full page of their brief focused on a series of cases brought under the federal Telephone Consumer Protection Act ("TCPA"). Each of these cases is inapposite for the plain reason that consent pursuant to Section 1101 need not be express. *See infra* at 4-5. Further, *McCurley v. Royal Seas Cruises, Inc.*, the case block-quoted by the Plaintiffs undermines their very position; here it is clear that consent was not "obtained in an identical or substantially similar manner from class members." 331 F.R.D. 142, 174 (S.D. Cal. 2019). And furthermore, BGA adduced evidence of express artist consent, as demonstrated by the artist agreements submitted as samples in connection with BGA's Opposition, Dkt. 110, Ex. U, and the hundreds of additional consents filed with BGA's Brief. Dkt. 161, Exs. 1-297. This is discussed in greater detail, *infra,* at Section III, but Plaintiffs' own authority counsels that this Court should find in favor of BGA on class certification.

Plaintiffs' arguments that BGA must "prove the merits for [its] defenses for each class

---

[4] It is telling that four of seven of Plaintiffs' allotted pages are focused on how affirmative defenses should be addressed by this Court rather than whose burden authorization is under Section 1101.

3

1  member" at class certification not only overstates the precedent on which it relies,[5] but presents an
2  impossibility for BGA. Here, Plaintiffs have yet to identify a single class member beyond themselves.
3  *See* Dkt. 109-4 at 13-14. It would be impossible for BGA to have adduced evidence for unknown,
4  putative class members at this juncture, beyond the evidence that BGA has already submitted.[6] This
5  is especially true where BGA has paid licenses for the uses at issue for nearly a decade.

6      Plaintiffs' fixation on the TCPA cases, where express consent is an affirmative defense,
7  highlights a fundamental misunderstanding of their putative claim under Section 1101. Setting aside
8  the fact that BGA has adduced evidence of express consent by a named plaintiff in this action for at
9  least Plaintiff Kihn's King Biscuit recordings at issue, *see* Dkt. 109-6, Exs. 4-6, *express consent is not*
10 *required under Section 1101*. Section 1101 makes no distinction between express, written, verbal or
11 implied consent—the statute merely states "without the consent of the performer." 17 U.S.C. § 1101.
12 Even the *ABKCO* court found that consent need not be written. *ABKCO Music, Inc. v. Sagan*, No. 15
13 CIV. 4025 (ER), 2019 WL 1382074, at *4 (S.D.N.Y. Mar. 26, 2019). Plaintiffs also attach a
14 requirement that consent must be provided at the time of fixation—this language appears nowhere in
15 the statute, and is counter to common practices of licensing. Plaintiffs' oversimplification that BGA's
16 evidence is captured in a "small number of easily-analyzed contracts" is addressed specifically below,
17 but Plaintiffs' arguments regarding the requirements of Section 1101 misapprehend the nature of their
18 own claim.[7]

19 **III.    CONSENT CANNOT BE ADJUDICATED ON A CLASS-WIDE BASIS**

20     Finally, Plaintiffs repeatedly state that BGA has not submitted any admissible evidence of
21 performer consent. Plaintiffs do not explain why the plethora of agreements that BGA has produced

---

[5] Indeed, the authority on which Plaintiffs rely merely states that if supporting evidence for a defense is "sufficiently similar or overlapping," it may permit a finding of predominance.

[6] Plaintiffs adjusted their class definition to not require that BGA have committed copyright infringement *for the first time on reply* to their Class Certification motion. BGA was therefore unaware that it should seek such types of discovery discussed in Section III prior to the Class Certification deadline. BGA should not be penalized for Plaintiffs' failures to garner or identify a class.

[7] The *ABKCO* Court *declined* to issue an injunction on the grounds that the alleged deficiencies in BGA's mechanical licenses with respect to the *ABKCO* plaintiffs *could be cured by retroactive licensing and agreements. See ABKCO Music, Inc. v. Sagan,* No. 15 CIV. 4025 (ER), 2018 WL 1746564, at *23 (S.D.N.Y. Apr. 9, 2018) ("Although that is insufficient to entitle them to exploit these recordings without the proper licenses, *these licensing hurdles are not insurmountable*.")

in this case and provided to the Court—indeed more than 300 counting the acquisition agreements, artist agreements, and joint exploitation agreements, plus the mechanical licenses BGA possesses—are inadmissible. Setting aside the fact that Plaintiffs' arguments lack any foundation or legal basis, BGA has submitted to this Court ample evidence as to why these issues—both Plaintiffs' burden of authorization for Section 1101, and BGA's license defense—cannot be resolved on a class-wide basis.

While the written evidence will no doubt play a role in the assessment of the issues presented by this matter, evidence of consent—either in the context of Plaintiffs' prima facie case or BGA's affirmative defenses—need not be written. *ABKCO*, 2019 WL 1382074 at *4.  Thus, the bulk of the evidence that will need to be collected in this matter will be individualized factual inquiries into the performers, their various agents, all members of the bands at issue, as well as any other parties, such as record labels, and their individual credibility about their authorization and contentions about who may have had the right to provide consent on behalf of the artist.[8] Such evidence is not hypothetical—indeed, sworn testimony to this effect in the *ABKCO* case detailed that consent was often conveyed in a handshake deal.[9] Even this detail of inquiry does not reflect the fact that there could be statements made by artists *during the concerts themselves* that recording was permitted, or that such artists were known as "trade-friendly" or generally comfortable with recording of their shows. An individual investigation needs to be made not only into each artist, *but into each recording* in order to properly try this claim. As such, it is ill suited for class certification, and Plaintiffs' motion should be denied.

---

[8] For example, several artists were managed by BGA's predecessor—Bill Graham—at the time the recordings were made, including Santana, Jefferson Airplane and Eddie Money.  Others like the Grateful Dead, expressly encouraged and allowed all audience members to record, eliminating the possibility for "bootlegs." See "Bill Graham Biography," BILL GRAHAM FOUNDATION, https://billgrahamfoundation.org/about-bill/biography/ ("While managing artists like Carlos Santana, Van Morrison, Eddie Money, the Neville Brothers, Joe Satriani, and Blues Traveler…:) (*last accessed* Dec. 15, 2019); "Call Them Hippies, But the Grateful Dead Were Tech Pioneers, WIRED, https://www.wired.com/2015/07/grateful-dead-fare-thee-well-tech-pioneers/ (July 3, 2015) (*last accessed* Dec. 15, 2019).

[9] This is why BGA sought artist discovery in *ABKCO,* the denial of which will be central to any appeal. Credibility of the individual performers also comes into play given how old many performances at issue are—just because an artist cannot recall all details regarding consent (which is what a couple artists claimed when submitting declarations to avoid depositions in *ABKCO*) does not mean consent was not provided.  These are often old recordings and highly individualized questions.

Dated: December 16, 2019

WINSTON & STRAWN LLP

By: /s/ *Erin R. Ranahan*
Michael S. Elkin
Thomas Patrick Lane
Erin R. Ranahan

Attorneys for Defendants
BILL GRAHAM ARCHIVES LLC, d/b/a WOLFGANG'S VAULT, NORTON LLC, and WILLIAM E. SAGAN