1  Michael S. Elkin (admitted *pro hac vice*)
   melkin@winston.com
2  Thomas Patrick Lane (admitted *pro hac vice*)
   tlane@winston.com
3  WINSTON & STRAWN LLP
   200 Park Avenue
4  New York, NY 10166
   Telephone:    (212) 294-6700
5  Facsimile:    (212) 294-4700

6  Erin R. Ranahan (SBN: 235286)
   eranahan@winston.com
7  WINSTON & STRAWN LLP
   333 S. Grand Avenue
8  Los Angeles, CA 90071-1543
   Telephone:    (213) 615-1700
9  Facsimile:    (213) 615-1750

10 Attorneys for Defendants
   BILL GRAHAM ARCHIVES LLC, d/b/a
11 WOLFGANG'S VAULT, NORTON LLC, and
   WILLIAM E. SAGAN

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                           OAKLAND DIVISION

16

17 | GREG KIHN, an individual; and RYE BOY      Case No. 4:17-cv-05343-YGR
   | MUSIC, a California Limited Liability
18 | Company,                                    **CLASS ACTION**

19 |              Plaintiffs,                     **DEFENDANTS' NOTICE OF MOTION AND
   |                                              MOTION IN SUPPORT OF ITS MOTION
20 |       vs.                                    TO CLARIFY AND/OR AMEND ITS CLASS
   |                                              CERTIFICATION ORDER;
21 | BILL GRAHAM ARCHIVES, LLC, dba              MEMORANDUM IN SUPPORT OF SAME
   | WOLFGANG'S VAULT, a Delaware
22 | Limited Liability Company; NORTON, LLC,
   | a Nevada Limited Liability Company; and     Judge:   Hon. Yvonne Gonzalez Rogers
23 | WILLIAM SAGAN, an individual,                Dept.:   Courtroom 1, 4th Floor
   |                                              Date:    July 21, 2020
24 |              Defendants.                     Time:    2:00 p.m.

25

26

27

28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, on July 21, 2020, at 2:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Courtroom 1, Oakland, California, Defendants Bill Graham Archives, LLC, dba Wolfgang's Vault, Norton, LLC, and William Sagan ("Defendants") will and hereby do respectfully move the Court to clarify and/or amend certain aspects of the Court's April 10, 2020 Order Granting Motion for Class Certification, at Dkt. 170 (the "Order").

This motion is based on this Notice of Motion and Motion to Clarify, the following memorandum of points and authorities, the supportive declarations and evidence, the pleadings and papers on file in this action, and on such other evidence and argument the Court may consider.

Dated: June 15, 2020

WINSTON & STRAWN LLP

By:  /s/ *Erin R. Ranahan*
Michael S. Elkin
Thomas Patrick Lane
Erin R. Ranahan

Attorneys for Defendants
BILL GRAHAM ARCHIVES LLC, d/b/a
WOLFGANG'S VAULT, NORTON LLC, and
WILLIAM E. SAGAN

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This Court recently certified two classes against Defendants for both copyright and bootlegging claims. Setting aside Defendants' separate legal challenges to the classes certified by the Order, there are several parts of the Order that should be clarified or amended to comport with the law.

First, it is incumbent upon any copyright or bootlegging plaintiff to identify the works that it claims are infringing, as statutory damages under the Copyright Act are awarded *per work*.  As the Order defines the classes without any reference to works, a mechanism should be built in to require class members to identify for which works they seek separate statutory damages awards.

Second, though the Order required Defendants to identify class members of copyright "owners," Defendants are in no position to prove or confirm the ownership of any class members through its own or third party records. Indeed, ownership is a threshold standing issue that a plaintiff suing for copyright infringement must satisfy in order to proceed with copyright claims. Consequently, the Court should require class members of the composer class to provide proof of ownership, which is the plaintiffs' burden in any copyright infringement case.

Third, the Court disregards the three-year statute of limitations for the claims in making the classes of twice that length, and "through the present."  The definitions should be amended to equal the statute of limitations at issue, three years from the filing of the Complaint.

## II.    FACTUAL BACKGROUND

Defendants, Mr. Bill Sagan and his two small companies, are the lawful owners of master sound recordings and sound recording copyrights in historic live concert recordings.  These recordings were amassed through a dozen acquisitions over the past two decades.  *See* Dkt. 170 ("Order") at 4. Defendants ultimately spent tens of millions to purchase, to restore and bring this unique collection of recordings to the public. *See id.* The Wall Street Journal has referred to Defendants' collection as "the most important collection of live concert recordings ever assembled."  *See* "Music Stash Recalls When Rock Was Young," Ethan Smith, WALL STREET JOURNAL (Dec. 13, 2005), *available at* https://www.wsj.com/articles/SB113443205766020664 (last accessed May 6, 2020).

Defendants have provided access to their recordings through their website since 2006.

Defendants had and defended claims in a lawsuit against the major record labels in 2006-2007, filed in this Court. *See Grateful Dead Productions et al. v. Sagan et al.,* 5:06-cv-07727-JW (N.D. Cal. 2006).[1] Those lawsuits settled with the major record labels acknowledging Defendants' copyrights, and confirming that the artists consented to the recordings (e.g., confirming they were not bootlegs). It was not until nearly ten years later when multi-million dollar conglomerates of dozens of music publishers organized by their lobbyist, the National Music Publishers Association ("NMPA") decided to sue Defendants in the Southern District of New York in in *ABKCO et al. v. Sagan et al.*, 1:15-cv-04025-ER-SLC (S.D.N.Y. 2015) ("*ABKCO*").  Plaintiffs seek to piggy-back on *ABKCO* through this lawsuit.  *ABKCO* was filed in 2015.  In March 2020, after five years of litigation and a two-week damages trial, the jury ultimately awarded the *statutory minimum* of damages for 30 works in a case about 197 works, and awarding less than $200,000 total when Plaintiffs sought the maximum statutory damages of nearly $30 million.  *See ABKCO*, Dkt. 351 (Mar. 13, 2020).

Defendants' business has never been profitable. Declaration of Erin R. Ranahan at ¶ 2 and Ex. 1, (Declaration of William Sagan ("Sagan Decl.") ¶ 2.  Furthermore, the current financial pressures of COVID-19 and the global panic has caused Defendants to lay off nearly 40% of their staff. Ex. 1 Sagan Decl. ¶ 3.

The named Plaintiffs are (1) a performing artist, Mr. Greg Kihn and (2) his publisher, Rye Boy Music. Over the course of the past decade, Mr. Kihn has worked with Defendants on multiple projects, promoted Defendants' businesses and played Defendants recordings on his radio show.   Dkt. 108 at 2.  Defendants have further licensed any and all compositions through the Section 115 licensing process available to compulsory licensees. *Id.* at 6-7 n.8.

Plaintiffs filed this case in 2017, asserting claims for copyright infringement of musical compositions as to the Composer Class, and violations of the anti-bootlegging statute for the Performer Class. Dkt. 170 ("Order") at 24-26. The anti-bootlegging statute is designed to permit a claim for relief when there is no copyright claim available, as the only recording at issue is an unlawful bootleg

---

[1] Mr, Sagan later was subsequently sued by two of Bill Graham's sons for copyright infringement for their stake in the collection, but prevailed and was awarded his legal fees. *See Graham-Sult et al. v. Clainos et al.*, 4:10-cv-04877-CW, Dkts. 328 and 337 (N.D. Cal. 2010).

recording. Plaintiffs seek statutory damages and injunctive relief.  Order at 24-26.

In November 2018, Plaintiffs moved for class certification. *See* Dkt. 107.  Defendants' Opposition explained the extensive individualized issues, Plaintiffs' failure to identify class members, and problems with injunctive relief.  *See* Dkt. 108.  On Reply, Plaintiffs revised their class definition based on Defendants' objections. Dkt. 121 ("Reply") at 2-3.  Oral argument was heard on April 17, 2019.  On April 10, 2020, the Court certified a "Composer Class," and a "Performer Class." Defendants filed a Rule 23(f) Petition appealing the decision on April 24, 2020, which is currently pending before the Ninth Circuit.  As Plaintiffs were unable to identify any putative class members besides the named Plaintiffs, the Court's Order required Defendants to identify for Plaintiffs members of the two classes.

## III.   THE COURT SHOULD CLARIFY AND/OR AMEND THE ORDER

With respect to the Order, Defendants seek clarification on certain issues not addressed in connection with Defendants' obligation to identify absent class members.  Specifically, Defendants seek amendment or clarity as to certain questions of Plaintiffs' burden of ownership and the temporal aspects of class membership. Each is addressed in turn below.

### A.   Defendants Seek Clarification as to Plaintiffs' "Composer" Class

As currently defined, the "Composer Class" is comprised of

> All owners of the musical compositions encompassed in sound recordings and audiovisual works of non-studio performances reproduced, performed, distributed, or otherwise exploited by Defendants during the period from September 14, 2014, to the present.

Order at 36.  The adopted definition by the Court was articulated by Plaintiffs for the first time on reply in class certification. *See* Reply at 2-3.  Defendants initially raised practical and legal issues with the revised Composer Class definition during the class certification hearing.  *See* 04/17/19 Oral Arg. Tr. at 32:16-34:3. Defendants now seek amendment or clarification with regard to these same certain practical issues.

#### 1.   Plaintiffs must identify the works at issue.

A copyright complaint must definitively identify works that were unlawfully exploited in the time period predating the filing of the suit. *See, e.g.*, *Bespaq Corp. v. Haoshen Trading Co.*, No. C 04-

3

3698 PJH, 2005 WL 14841, at *2 (N.D. Cal. Jan. 3, 2005) (dismissing complaint where allegedly infringed works not definitively identified); *see also Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) (dismissing complaint where the plaintiff alleged that "certain of [its 1800] photographs" had been infringed without specifying which works it placed at issue). Furthermore, it is Plaintiffs' decision to identify the works that they wish to pursue—some Plaintiffs may not wish to pursue full catalogs for economic reasons, as has been demonstrated by Mr. Kihn here and in *ABKCO*. Order n.7 (removal of certain categories of works in suit); *see also Petrella v. Metro-Goldwyn Mayer, Inc.*, 572 U.S. 663, 682-83 (2014).

Because the "Composer Class" is defined by ownership rather than by work, it fails to be in comportment with the basic pleading standards of copyright law. It is insufficient to presume that an absent class member wants to sue Defendants on every non-studio work that may be available through Defendants' website. Such a presumption fails to satisfy the requirement of a definite statement of works at issue, and furthermore robs that class member of her opportunity to select the time at which it chooses to pursue an infringement action (if ever).

Indeed, Plaintiff have decided *not* to include in as claimed works at issue in this case with respect to many of his own of his works, such as all King Biscuit recordings, and the recordings that he made live at Defendants' studios. *See* Reply at 3; Order at n.7.  Similarly, in *ABKCO*, the publisher plaintiffs had strategic reasons for not suing on all songs that they owned and were featured on Defendants' websites.  *See* Ranahan Decl. ¶ 4 and Ex. 2 (*ABKCO*, 2/27/2020 Hr'g. Tr. at 25:16-26:2.) Plaintiffs,[2] spearheaded by their DC lobbyist, the National Music Publishers' Association, chose to only sue on a small percentage of their overall catalogs despite other recordings embodying works purportedly owned by the publisher plaintiffs' on Defendants' websites. Ranahan Decl. ¶ 5 and Ex. 3 (3/3/2020 Trial Tr. at 175:12-23) (ABKCO sued on 12 out of its 5000 compositions owned), 227:17-21 (Peermusic sued on 8 of its 500,000 songs owned); Ranahan Decl. ¶ 5 and Ex. 4 (3/4/2020 Trial Tr. 376:21-377:4) (Concord sued on 5 of approximately 200,000 songs owned as of 2019), 421:25-

---

[2] Indeed, the NMPA organizes large litigation for large music publishers who want to join particular lawsuits. The plaintiffs in *ABKCO* included some of the largest music publishers in the United States, including Warner/Chappell, Sony/ATV, Spirit Music Group, and Concord Music, Inc.

422:7 (Warner/Chappell sued on 55 of a million works owned), 3/5/2020 575:25-576:8 (Spirit sued on 77 of its 75,000 compositions owned), Ranahan Decl. ¶ 5 and Ex. 5 (3/5/2020 Trial Tr. at 595:15-17) (Sony/ATV sued on only 42 of its 4 million compositions owned).

Furthermore, absent class members may be satisfied with the royalties they are receiving and not wish to litigate those works.  Given that Defendants are paying for the uses, it is up to each class member to select which works with which they claim there are issue.

For this reason, Defendants respectfully request that the Court set a date certain whereby absent class members identify the works on which they intend to sue Defendants.

### 2.    It is Plaintiffs' burden to demonstrate copyright ownership.

In order to have standing upon which to proceed on a copyright infringement claim, a plaintiff must first prove ownership of a valid copyright. *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). While a valid registration can create prima facie evidence of ownership, defendants have the right to challenge ownership. *See In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1100 (N.D. Cal. 2002) ("[R]efusing to allow any discovery on the issue of ownership converts the presumption of ownership into an irrebuttable one.").

As written, the class definition includes "all owners of the musical compositions… exploited by Defendants[.]" Order at 36. While the Court has found ownership to be a requisite component of class membership, it has placed the onus on Defendants to identify copyright "owners." Order at 37. shifting the burden of substantiating ownership onto Defendants.  While Defendants can identify the entities they pay, as described infra at III.a.ii, it is each Plaintiffs' burden as a matter of law to demonstrate *who* owns the copyrights at issue.  *See Feist*, 499 U.S. at 361; *In re Napster*, 191 F. Supp. 2d at 1100. Defendants then have the opportunity to rebut this assertion through investigation of chain of title evidence and discovery.

This is particularly important because, despite Plaintiffs' moniker, any Composer Class members will include music publishers like Rye Boy Inc.  Music Publishers, like those in ABKCO, were not "composers" at all, but were large publishers that simply purchased large catalogs of composition rights for hundreds of millions of dollars. *See, e.g.*, *ABKCO*, Trial Tr. at 398:12-399:3 (Concord Music acquired publishing catalog of 150,000-200,000 compositions for $500,000,000 in

5

2017).  As demonstrated by the discovery thus far in this case, music publishers administer and own the rights of catalogs of musical compositions. Order at 2. Publishing catalogs often change hands across companies, and therefore investigation into the provenance of copyright ownership is required on a work-by-work basis. *See, e.g.*, *ABKCO*, 2018 WL 1746564 at n.1 (substituting a plaintiff entity where a major ownership defect was uncovered in chain of title).

Despite the Court's assumptions in the Order, *see* Order at 17, current ownership information is often not in Copyright Office records, and the registration certificates could contain errors that Defendants are entitled to investigate.[3]  A copyright registration certificate would also not account for the common situation where, because ownership has changed hands, the registration does not reflect the rights holder's name.  There, chain of title records are necessary to demonstrate ownership. *See, e.g.*, *ABKCO*, 2018 WL 1746564 at n.1. Chain of title discovery is work-specific, and can include documents related to mergers, acquisitions, transfers, work for hire agreements, exclusive licenses, and more, *none* of which need to be registered with the Copyright Office.[4]

The Order further states that "as necessary, ownership can further be substantiated by the third-party licensing rights agencies who administer and manage licensing for music publishers (*i.e.*, Harry Fox Agency, Rightsflow, Inc., and MediaNet)."  Order at 17.  This impermissibly shifts Plaintiffs' burden to third-parties. *See Feist*, 499 U.S. at 361 (1991).  Even if such burden shifting were proper, third parties are in no position to verify or provide documentation to prove ownership.  Ownership is

---

[3] If the documents on file at the United States Copyright Office were sufficient to prove valid copyright ownership, the bootlegging class should be decertified given that Defendants own certificates of registration for each of the recordings that are being challenged here as so-called "bootlegs." Defendant owns certificates of registration from the United States Copyright Office for the recordings, and copyright protection does not extend to bootlegs.

[4] *Compare, e.g.*, *UMG Recordings, Inc. v. MP3.com, Inc.*, No. 00 Civ. 472, 2000 WL 1262568, at *6 (S.D.N.Y. Sept. 6, 2000) (noting at least 4,700 copyrights claimed and setting statutory damages at $25,000 per work) *with* 2000 U.S. Dist. Lexis 17907, *1 (S.D.N.Y. Nov. 14, 2000) (awarding damages to UMG for only 2,136 works); *compare Warner Records Inc., et al. v. Charter Communications, Inc.*, 1:19-cv-00874-RBJ-MEH, Dkt. 1, Exs. A and B (Complaint) (D. Colo. 2019) *with* Dkt. 123 Exs. A and B (Amended Complaint) (removing 455 works in suit following preliminary ownership discovery); *see also BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 649–50 (E.D. Va. 2015), aff'd in part, rev'd in part, 881 F.3d 293 (4th Cir. 2018) (dismissing infringement claims on summary judgment because claimant on copyright registration was not co-owner or exclusive licensee)

an individualized inquiry requiring close examination of the evidence, and cannot be dispensed of by relying on inadequate records and third party representations.[5]

For this reason, Defendants would respectfully request a date certain by which the absent class members identified must produce chain of title documentation for the works on which they are bringing suit. Such a deadline will serve judicial efficiency because it will allow early analysis of class member standing, and provide for amendment of the works at issue prior to merits discovery.  This will also permit the parties to attempt to address any questions of joint ownership, ownership challenges, or ownership splits early in the litigation, as is wont to happen in copyright suits. *See, e.g.*, *Paramount Pictures Corp. v. Int'l Media Films Inc.*, No. CV 11-09112 SJO AJWX, 2013 WL 3215189, at *9 (C.D. Cal. June 12, 2013) (considering evidence of competing chains of title). This will also help to frame the potential exposure of this case and whether any settlement would be possible without bankrupting Defendants.

Because Defendants and third parties are unable to substantiate presumed ownership of class members, Defendants are practically unable to identify music composition "owners" for the sake of class discovery. Defendants provided a listing for the publishers that third party MediaNet paid through third-party agents for compositions embodied in the categories of recordings identified in the Order and that are not otherwise excluded through separate agreement or legal proceeding.  Such information in no way constitutes a waiver of Defendants lawful rights to investigate through discovery ownership claims to rebut Plaintiffs' assertions of ownership in connection with their burdens under copyright law. *See Feist*, 499 U.S. at 361; *In re Napster*, 191 F. Supp. 2d at 1100.

**B.    Class membership should be limited to the three-year period predating the filing of suit, and not thereafter.**

The claims in this case have straightforward three-year statutes of limitations. Because the claims were filed on September 14, 2017, the only claims relevant are those from September 14, 2014 to September 14, 2017.  As defined, the "Composer Class" is forward looking. Although the "Performer Class" is premised on a quasi-copyright claim, it is subject to the same statute of

---

[5] As the Court notes, even the *Napster* court recognized that ownership must be analyzed on a work-by-work basis. *See In re Napster*, 2005 WL 1287611, at *7.

1  limitations, and premised on a prior-made recording. *See* 17 U.S.C. §§ 507; 1101. Membership should

2  be restricted to recordings exploited in the three years predating the filing of the complaint.

3      A class "to the present" essentially doubles the statute of limitations merely because of the

4  length of time it took to adjudicate class certification from filing. Moreover, a forward looking class

5  de facto bars Defendants from adding new recordings to their websites without creating new class

6  members—this essentially imposes a preliminary injunction without any assessment on the merits.

7  Both classes should be restricted to the time period predating the lawsuit by three years to comport

8  with maximum available time period under statute of limitations, consistent with the typical approach

9  under copyright law.

10  **IV.   CONCLUSION**

11      For the reasons described herein, Defendants respectfully request that the Court grant its

12  Motion for Clarification find as follows, and set certain additional deadlines:

13      a.  Set a deadline for Plaintiffs to identify the works at issue following such identification

14        by Defendants;

15      b.  Set a deadline for Plaintiffs to produce chain of title documents related to the works at

16        issue; and

17      c.  Clarify the three-year class membership period for both the Composer and Performer

18        Classes.

19                   Respectfully Submitted,

20  Dated: June 15, 2020          WINSTON & STRAWN LLP

21                   By:   /s/ *Erin R. Ranahan*

22                      Michael S. Elkin
                    Thomas Patrick Lane

23                      Erin R. Ranahan

24                      Attorneys for Defendants
                    BILL GRAHAM ARCHIVES LLC, d/b/a

25                      WOLFGANG'S VAULT, NORTON LLC, and
                    WILLIAM E. SAGAN

26

27

28