**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 3 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GREG KIHN, an individual; RYE BOY MUSIC, LLC, a California Limited Liability Company, <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> BILL GRAHAM ARCHIVES LLC, DBA Wolfgang's Vault, a Delaware Limited Liability Company; NORTON LLC, a Nevada Limited Liability Company; WILLIAM E. SAGAN, an individual, <br><br> Defendants-Appellants. | No.   20-17397 <br><br> D.C. No. 4:17-cv-05343-YGR <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Yvonne Gonzalez Rogers, District Judge, Presiding

Argued and Submitted December 9, 2021
San Francisco, California

Before: FRIEDLAND, BRESS, and BUMATAY, Circuit Judges.

Musician Greg Kihn and his publishing company, Rye Boy Music, LLC, successfully sought class certification in an action alleging violations of federal

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

copyright and anti-bootlegging laws. Defendants are the owners and operators of Wolfgang's Vault, a website where users can pay to access thousands of live concert recordings from the 1950s through the 1990s. Defendants appeal the district court's certification of two classes of performers and composers. We have jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). We reverse.

  The party seeking class certification must prove that she has met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Here, the district court determined that all four requirements of Rule 23(a) were met, and it certified the classes under both Rule 23(b)(3) and Rule 23(b)(2). *Kihn v. Bill Graham Archives, LLC*, 445 F. Supp. 3d 234, 245–65 (N.D. Cal. 2020). Because individual issues predominate and class-wide injunctive relief was not appropriate on these facts, we conclude that the district court erred in certifying the classes.

  Wolfgang's Vault contains thousands of audio and audiovisual recordings featuring hundreds of performers, including well-known artists such as the Rolling Stones, Janis Joplin, and the Grateful Dead. Defendants assembled their vast archive by acquiring the private collections of roughly a dozen concert promoters, theaters, radio producers, and sound engineers. One of Defendants' sources was

the King Biscuit Flower Hour, a radio show that broadcasted live performances from concert halls with the help of a mobile recording truck. During the 1970s and 1980s, Greg Kihn and his band performed at popular venues including Winterland and the Bottom Line, and at least fifteen of his concerts from that era now appear on Defendants' website. According to Kihn, he never consented to the initial recording or later distribution of his performances. Kihn and his publisher ("Plaintiffs") now bring claims for copyright infringement under 17 U.S.C. § 101, *et seq.*, and unauthorized fixation of and trafficking in live musical performances under 17 U.S.C. § 1101 ("the anti-bootlegging provision"[1]) on behalf of themselves and other artists whose works appear on Defendants' website.

The putative class definition has changed in important ways since the start of this action. Plaintiffs initially sought to certify a single class, defined as "[a]ll owners of copyrights and musical compositions registered under United States copyright law, that were reproduced and/or distributed by Defendants without a license since 2003." Then, in their motion for class certification, Plaintiffs pushed the start of the class period back more than a decade to September 2014 and split

---

[1] In 1994, Congress passed the Uruguay Round Agreements Act, which amended Title 17 of the U.S. Code to add a new Chapter 11. Pub. L. No. 103-465 § 512, 108 Stat. 4809, 4974 (1994). Section 1101 addresses a problem not previously covered by the Copyright Act: the unauthorized recording of live music performances, also known as bootlegging. It also prohibits the later transmission of such unauthorized recordings.

the class into a Composer Class and a Performer Class, defined respectively as "[a]ll owners of copyrights" and "[a]ll persons whose performances are fixed" in the works exploited by Defendants "without a license or authorization to do so."

In their opposition to class certification in the district court, Defendants argued that Plaintiffs had proposed an impermissible fail-safe class, which, by definition, excluded anyone who could not prove liability. *See Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016). Defendants further asserted that the recordings were authorized at the time of performance and that Defendants had acquired all the necessary licenses to exploit the recordings after the fact. Defendants attached to their motion numerous documents purporting to show such license and consent, including a seven-year licensing agreement between Greg Kihn and the King Biscuit Flower Hour.

In reply, Plaintiffs made two changes to their class definition. First, they removed the qualifier "without a license or authorization to do so" to avoid the fail-safe problem. Second, they changed "performances" to "non-studio performances." Plaintiffs argued in the district court that "[t]he class definitions now include all non-studio performances, for which no evidence of consent at the time of fixation exists, and explicitly exclude groups of works that were recorded in a studio." Plaintiffs asserted that the limitation to non-studio performances excluded the King Biscuit recordings, but they did not specify which other

4

performances would now be excluded.

The district court accepted Plaintiffs' changes and certified two classes:

[Composer Class:] All owners of the musical compositions encompassed in sound recordings and audiovisual works of non-studio performances reproduced, performed, distributed, or otherwise exploited by Defendants during the period from September 14, 2014, to the present.

[Performer Class:] All persons whose non-studio live musical performances are captured in the recordings of sounds or sounds and images which have been reproduced, performed, distributed, or otherwise exploited by Defendants during the period from September 14, 2014, to the present.

*Kihn*, 445 F. Supp. 3d at 265.  The district court explained that these classes "exclude[d] recordings made in a studio," and that the King Biscuit recordings, at least, were therefore "no longer at issue." *Id.* at 242 n.7.  But the King Biscuit Flower Hour was known for its broadcasts of *live* concert performances, as Plaintiffs themselves acknowledged in their Complaint.  Even if the recording truck that King Biscuit parked outside venues could be described as a "studio," it captured concerts that were undisputedly performed live, at "non-studio" venues. In accepting Plaintiffs' class redefinition without questioning the grounds that justified exclusion of the King Biscuit recordings, or the problems for commonality and predominance reflected by that exclusion, the district court failed to conduct the "rigorous analysis" required for class certification.  *Comcast*, 569 U.S. at 35 (quoting *Wal-Mart, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)).

When asked about this "non-studio" discrepancy at oral argument on appeal,

5

Plaintiffs' counsel explained that the King Biscuit recordings had been excluded not because they were all studio recordings, but because "our clients' interaction was different in that case." In other words, Plaintiffs appear to have tailored the classes to the merits of Kihn's individual claims. Faced with evidence that some of Kihn's concerts were recorded with his consent, which would fatally undermine his claims for those concerts, Plaintiffs attempted to redefine the classes to exclude those concerts. But Plaintiffs may not accommodate differentiated evidence of their own consent while asking that every other artist's recordings be presumed unauthorized and included in the classes by default. If the case were litigated to judgment, individual issues of license and consent would predominate for the absent class members, who have not yet had the opportunity Plaintiffs had to sift through their claims and exclude those that lack merit.[2] Plaintiffs' proposed classes thus failed to satisfy Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only

---

[2] The district court concluded that class certification was warranted because Defendants have pointed to written agreements with "substantially identical material terms" to suggest that class members consented to the recordings. *Kihn*, 445 F. Supp. 3d at 253. But those agreements in fact vary as to the artists, performances, and rights they purport to cover. And Defendants submitted additional agreements with even more variation that the district court appears not to have considered. Determining whether any performer or composer consented to the recording of live performances at numerous events over a period of decades will thus require individualized analysis.

6

individual members." Fed. R. Civ. P. 23(b)(3).[3]

The district court also erred in certifying the classes under Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiffs seek "[a]n injunction requiring Defendants to stop infringing the intellectual property rights of Plaintiffs and the Class," which could result in Defendants' removing all non-studio recordings from their website. This is a plainly inappropriate class-wide remedy. Some putative class members are earning royalties from or have otherwise agreed to Defendants' distribution of their works, while others may wish to enter similar agreements. And it is not true, as Plaintiffs argue, that such artists could simply exit the litigation. Rule 23(b)(2) does not give class members the right to opt out. *See Dukes*, 564 U.S. at 362.

The district court treated the Rule 23(b)(2) analysis as "subsumed within the more searching Rule 23(b)(3) inquiry." *Kihn*, 445 F. Supp. 3d at 248. That

---

[3] There are other ways in which Kihn's claims appear not to be typical, or not to present questions common to the classes. For example, it is unclear whether section 1101 even applies to recordings, such as Kihn's, that were made before the statute was enacted in 1994. Because the predominance problem presented by individualized questions of consent defeats class certification, we need not reach these other issues.

7

misstates the relationship between the two forms of class certification. Rule 23(b)(2)'s inquiry into predominance is less searching not because it is less stringent, but because no inquiry should even be needed—predominance must be "self-evident." *Dukes*, 564 U.S. at 363. Here, there is an insufficient showing that common questions predominate, and Plaintiffs have not shown they are seeking an injunction "benefitting all [class] members at once." *Id.* at 362. Accordingly, we reverse the district court's grant of class certification under Rule 23(b)(2).[4]

For the foregoing reasons, we **REVERSE**. This case is **REMANDED** for further proceedings consistent with this disposition.

---

[4] The motion to file an amicus brief submitted by the California Society of Entertainment Lawyers, et al., is GRANTED.